# Owen M. Bruner Co. v. Standard Lumber Co., Appellant.

*Contract—Contract by correspondence — Acceptance — Revocation.*

While an acceptance of an offer to contract is complete where a letter is deposited in the mail, a retraction of the offer can have no effect until it is communicated to the person to whom the offer is made, and the revocation can take effect only if it is communicated to the other party before its acceptance.

Where an offer to purchase lumber is made subject to confirmation, and subsequently on an August 11th the purchaser telegraphs a confirmation of the order, and on the same day the seller by letter retracts the offer, and this letter is not received by the purchaser until August 14th, the retraction is ineffectual; and it is immaterial that the seller may have telegraphed also on August 11th, after the accepting telegram was received, that the offer had been revoked.

*Affidavit of defense—Contract—Sales—Mistake.*

In an action to recover the price of lumber, an affidavit of defense is insufficient which merely alleges that the price quoted for the lumber and referred to in the correspondence $26 per thousand, was a mistake, and should have been $36 instead, and that plaintiff knew that the defendant had made a mistake. In such a case the affidavit should disclose such equitable grounds as would relieve the defendant of the written order and narrate such facts as would bring knowledge of the mistake to the plaintiff, or at least sustain an inference to that effect.

Argued Oct. 7, 1915. Appeal, No. 1, Oct. T., 1915, by defendant, from order of C. P. No. 5, Philadelphia Co., Sept. T., 1914, No. 101, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Owen M. Bruner Company v. Standard Lumber Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for breach of contract to deliver lumber.

Rule for judgment for want of a sufficient affidavit of defense.

RALSTON, J., found the facts to be as follows:

It appears from the statement of claim that on July 20th, plaintiff wrote to defendant enclosing a schedule of lumber described as "Ruby," asking the price of this lumber delivered at Ocean City, N. J.

The letter stated that the lumber was to be creosoted, but if defendant was not in a position to have the creosoting done, plaintiff requested to be informed of the price for the lumber, delivered to the above point, or f. o. b. cars at defendant's mill; and when the shipment could be commenced and completed. On July 22d, defendant replied, "We acknowledge receipt of your letter of the 20th, and beg to quote you on your schedule 'Ruby' $26 per thousand feet delivered on cars, Ocean City, N. J. We can make complete shipment within sixty days from date of the order. We trust that our price will

enable you to close the business for us.    Kindly let us know if you are using it."

On July 25th plaintiff wrote acknowledging the receipt of defendant's letter of July 22d, repeated the price and terms contained therein, and requested a price on the lumber creosoted.

On July 30th plaintiff received a letter from defendant dated July 27th, in reply to the letter of July 25th, stating: "You understand correctly our quotation on schedule 'Ruby,' and expressing regret at the inability to name a price for the lumber creosoted."

On July 30th plaintiff telegraphed defendant to enter an order for the portion of schedule "Ruby" at the price quoted by defendant in the letter of July 22d, adding instructions to—"Hold for final confirmation before commence cutting as we are awaiting signing of contract."   On the same day plaintiff wrote to defendant: "We have your letter of the 27th inst., advising we correctly understood your quotation on schedule 'Ruby,' and that you are unable to name a price on the stock creosoted.......We have been given a promise of this business, under the condition that it is held open until the contracts are signed between the city and our customer, as we believe the State law requires a certain time to elapse between the receiving of the bids and the awarding of the contract, so unless something unforeseen arises, we will send you a formal order at that time."

On August 8th plaintiff wrote to defendant: "Supplementing our letter of July 30th, our customer reports that he is making progress with the order covered by our schedule 'Ruby,' and that the chances are 99 out of 100 that the order will go through.   The expiration of the time required by the Jersey laws we believe is up sometime next week, and just as soon as possible we will instruct you to commence sawing."

The defendant sent no replies to the plaintiff's telegram and letter of July 30th, or his letter of August 8th, and on August 11th, plaintiff telegraphed defend-

ant as follows: "Have finally secured order for schedule 'Ruby.' Enter our order for same and commence cutting immediately. This is in accordance with our conditional order accepting your quotations on this inquiry."

On August 12th plaintiff mailed to defendant a formal order for the lumber, stating: "This is in accordance with your quotation of July 22d, and your subsequent letter of July 27th, replying to ours of the 25th ult., telling us we understood your quotation on our schedule 'Ruby' correctly. This confirms our conditional telegraphic order of July 30th, in which we instructed you to hold for final confirmation before you commence cutting, and our telegram of yesterday telling you we had finally gotten this business closed."

On the same day (August 12th) plaintiff received a telegram from defendant which mentioned a letter written by defendant on August 11th, and stated that defendant could not protect the thirty-six dollar quotation "Ruby" contract on account of having accepted other orders for similar stock. Plaintiff replied on the same day—"Sorry your telegram even date arrived too late as we had already closed order 'Ruby' with customer on basis your price time of shipment as per your instructions, namely, to close the business for us, consequently must count on you to meet the conditions. Your letter eleventh not received." Later in the day defendant telegraphed: "Do not expect us furnish your 'Ruby,' our letter eleventh final, other orders will not permit us to get this out." On the following day plaintiff telegraphed to defendant: "We are forced to count upon you to furnish 'Ruby' as per yours July twenty-second."

On August 14th plaintiff received a letter from defendant dated August 11th, stating: "We regret to advise you that we can not hold open our price of $36 per thousand feet delivered Ocean City, N. J., on your schedule 'Ruby' any longer, as we have taken on quite

some similar business, which is all the cutting we can get out within the next 60 days, and we for that reason will not be able to take on your order."

On August 15th, plaintiff received a letter from defendant dated August 12th, stating: "We have to-day received your night telegram advising that you had landed the business to which we replied by telegraph advising that you see our letter of the 11th, in which we stated that we couldn't take on the order at this time now."

On the same date, plaintiff wrote to defendant: "We beg to say that we closed a contract with you whereby you agreed to furnish to us 185,410 feet of lumber as per our letters to you under dates of July 20, 25 and 30, 1914, and your letters to us of July 22 and 27, 1914. On August 11, 1914, we notified you by telegraph of our final acceptance of your offer, and on August 12, 1914, we confirmed this by our order No. 8906, a copy of which we herewith enclose. Unless you notify us not later than August 19, 1914, that you will comply with the terms of said contract, we will purchase said lumber in the open market and hold you for all damages which we may suffer by reason of your failure to perform said contract."

On August 17th, defendant telegraphed: "We have cancelled all of your orders." On the following day plaintiff replied by telegraph: "We do not recognize cancellation orders."

On August 20th plaintiff received a letter dated August 17th, stating: "We have not entered into a contract to furnish your order......and our letter of the 11th inst., clearly states to you that we were not able to carry the quotation any longer......This letter does confirm our telegram in reference to the cancellation of all orders that we have on hand for you and you will arrange for them elsewhere. We will not ship you in the face of your letter of the 15th. We do not

desire to have any further business relations with you of whatever nature."

The statement further alleges that by reason of the refusal of defendant to carry out the terms of the contract to sell to plaintiff the lumber mentioned in the order, plaintiff was obliged to purchase the lumber in the open market, at a price $964.13 in excess of that quoted by defendant.

An affidavit of defense was filed admitting the correspondence set forth in the statement of claim, but alleging that the price quoted by defendant of $26 per thousand feet was a clerical error, and should, in fact, have been $36, and the president of the defendant company avers upon information and belief that "the plaintiff knew, or had good reason to believe, that the defendant had made a mistake in the price."

In the defendant's letter of July 22d, the price quoted was $26 per thousand feet. The plaintiff, in its reply of July 25th, said: "We have your letter of the 22d inst. quoting a price of $26." The defendant, in its letter of July 27th, said: "You understand correctly our quotation."

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Archibald T. Johnson,* for appellant.—The correspondence set forth in plaintiff's statement does not constitute a contract: Joseph v. Richardson, 2 Pa. Superior Ct. 208; Slaymaker v. Irwin, 4 Wharton, 368; Vincent v. Woodland Oil Co., 165 Pa. 402; Huber Mfg. Co. v. Smithgall, 19 Pa. Superior Ct. 641; Cooper v. Altimus, 62 Pa. 486; Collins v. Baumgardner, 52 Pa. 461; Clements v. Bolster, 6 Pa. Superior Ct. 411.

The court below usurped the function of a jury in passing upon the questions of fact raised by the affidavits of defense: Boyd v. Peanut Co., 25 Pa. Superior Ct. 199.

*Albert L. Moise,* with him *Paul C. Hamlin* and *A. J. & L. J. Bamberger,* for appellee.—The offer was subsisting until acceptance: Henthorn v. Fraser, 2 Ch. 27 (1892); Mactier v. Fritch, 6 Wendall, 103 Silliman v. Whitmer, 11 Pa. Superior Ct. 243.

No confirmation of acceptance was necessary: Cosgrove v. Woodward, 49 Pa. Superior Ct. 228.

OPINION BY TREXLER, J., July 18, 1916:

The plaintiff negotiated with the defendant for the purchase of certain lumber which was to be used at some public work in Ocean City, New Jersey. A schedule of the lumber required was submitted to the defendant who placed a price of $26.00 per thousand on the same, and the plaintiff agreed to the terms. The order was to be held open until the contract between the city and plaintiff's customer was signed, it appearing that a certain time was required by law to elapse between the receiving of the bids and the awarding of the contract. On August 11th plaintiff telegraphed defendant "Have finally secured order for Schedule 'Ruby' enter our order for same and commence cutting immediately this is in accordance with our conditional order accepting your quotations on this inquiry wire acknowledgement." This telegram was followed August 12th by a formal order. On the same day defendant sent a telegram which referred to a letter written by defendant on August 11th which had not yet reached plaintiff, the telegram stating that the defendant could not protect the $36.00 quotation having accepted other orders for similar stock. It will be noticed that in the first correspondence the price was $26.00 but is now referred to as $36.00. Plaintiff replied that it had made a contract on the basis of the price furnished by defendant and insisted on the fulfilment of the contract and subsequently after notice purchased the lumber in the open market and brought suit for the difference in the price.

The appellant in his statement of questions involved presents two matters for our consideration.

First: Was there a binding contract between the parties? There was a definite offer by the defendant to furnish the lumber at a certain price. The defendant was fully advised as to where the lumber was to be used and of the delay which would occur before the matter could be finally closed, and that the plaintiff intended to enter into a contract on the faith of its quotations. The quotation was to remain open and until the defendant advised to the contrary, the plaintiff had a right to rely on the offer made. That this was the intention of the parties is shown by defendant's letter of August 11th stating that it could not hold open the price any longer and this language is repeated in the letter of August 17th.

There is only one conclusion to be drawn from the pleadings and that is that the defendant held the order awaiting plaintiff's final confirmation of it, and that if the final confirmation came to the defendant before it had withdrawn its quotation, it is bound.

Was the revocation of the offer effective or did it come too late? While an acceptance is complete where a letter is deposited in the mail, a retraction of an offer can have no effect until it is communicated to the person to whom the offer is made and the revocation can take effect only if it is communicated to the other party before its acceptance. "An offer to contract, communicated by post must be considered as continually made until it reaches the other party. If he accepts before knowledge of a retraction of the offer, the contract is binding": Hamilton v. Lycoming Ins. Co., 5 Pa. 339; Hartley Silk Mfg. Co. v. Berg, 48 Pa. Superior Ct. 419; Boyd v. Peanut Co., 25 Pa. Superior Ct. 199; McClintock v. South Penn Oil Co., 146 Pa. 144. The letter of August 11th written by the defendant to the plaintiff retracting its offer was not received by the plaintiff until August 14th. On August 12th the plaintiff received a telegram from the defendant

withdrawing its offer. It therefore appears from the pleadings that the plaintiff accepted defendant's offer by telegram on August 11th and that this acceptance was received by defendant before it telegraphed a revocation of its offer, and before plaintiff had been notified that the offer had been withdrawn, it accepted the contract and the revocation came too late.

Second: Is the affidavit sufficient when it alleges that the price quoted, $26.00 per thousand, was a mistake and should have been $36.00 instead, and that plaintiff knew that the defendant had made a mistake? In defendant's letter of July 22d the price is quoted as $26.00. The plaintiff in its reply of July 25th said, "We have your letter of the 22d inst. quoting a price of $26.00." The defendant in its letter of July 27th said "You understand correctly our quotation." The statement that the price was a mistake and less than the market price and that plaintiff knew it, certainly cannot overcome the written agreement of the parties as to price thrice repeated. The affidavit should disclose such equitable grounds as would relieve it of its written offer and narrate such facts as would bring knowledge of the mistake to the plaintiff or at least sustain an inference to that effect.

The judgment is affirmed.