Baseman, to use, Appellant, *v.* Shell Union Oil
Corporation.

Argued October 5, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Maxwell Pestcoe,* with him *Maxwell L. Davis,* for appellant.

*Roland C. Heisler,* with him, *Drinker, Biddle & Reath,* for appellee.

OPINION BY PARKER, J., January 30, 1940:

Plaintiff brought an action in assumpsit against defendant corporation on a written contract and filed a statement of claim, whereupon defendant interposed an affidavit of defense raising questions of law. The plaintiff was permitted to file an amended statement of claim to which a second affidavit of defense was filed again raising questions of law. After argument the questions of law were resolved by the court below in favor of the defendant. The plaintiff declined an opportunity to make further amendments and took this appeal. He concedes that the single question for our consideration is the meaning of a portion of the written contract. We agree that such is the case but are of the opinion that the court below reached a correct conclusion. We take the facts from the pleadings.

Plaintiff and certain associates of his, engaged in the sale of oil and petroleum products, contracted to sell

to defendant, a corporation transacting the same kind of business, certain personal property and equipment, leases, contracts and agreements for the sale of petroleum products to dealers and consumers, "and the goodwill of the gasoline and automotive lubricants business then carried on by you [them] in the City of Philadelphia and its suburbs," agreeing at the same time that the plaintiff and his associates would not "for a period of three years after the date of said transfer, ...... engage, either individually or as a partnership or corporation, directly or indirectly, or through or as agent for any other individual, firm or corporation, in the business of selling or distributing gasoline, motor oil, grease or other automotive lubricants, in the City of Philadelphia and its suburbs," subject to certain exceptions not material to the issue raised.

The defendant agreed to pay to the sellers a sum in excess of $6,000 in cash and to make further monthly payments to Joseph Baseman or his nominee. The cash consideration was paid and possession of the personal property was taken by defendant. It likewise took over the leases and contracts and agreements for sale of products.

The present controversy concerns only the future payments provided for in the main contract and the purchase contracts for sale of petroleum products by Shell, as successor of plaintiff, to other dealers or customers, and particularly the effect of a cancellation of certain of such contracts by Shell. We will therefore confine our attention to the portion of the contract dealing with those subjects. Shell agreed to pay to Joseph Baseman, or his nominee, one-half cent per gallon "in respect of all gasoline sold by us [it], during the period of three years from the date of said transfer, at any location affected by said transfer either by reason of the assignment of a lease thereof or a contract with the owner or operator thereof, and also on all gasoline sold by us [it] during said period to the consumer customers listed in said

Schedule 'B'," and also to pay fifteen per cent of the net invoice price of motor oils and lubricants sold by defendant "at any such location during said period." Settlement was to be made monthly for the amount so coming due.

The main contract between the parties provided as follows: "Our agreement to purchase said property and to pay therefor the amounts specified above is based upon your representation to us ...... that all of said contracts [agreements for purchase and sale of products] and operating agreements are cancelable by you on not more than ten (10) days' notice."

The various purchase contracts contained provisions agreeing that the operators should purchase their entire requirements of petroleum products from the legal plaintiff and his associates and authorized the seller to cancel such agreements at any time on ten days' notice. When the main contract was consummated by the delivery of the property and contracts, Baseman and his associates, according to agreement, procured new contracts directly between such purchasers and Shell containing the same provisions with relation to purchase of requirements and cancellation. Shell paid to Baseman the monthly royalties or percentages for more than a year after the transfer and until July and August, 1938, when Shell exercised its right to cancel three of said purchase agreements, leaving in force twenty-four such contracts.

In February, 1938, Baseman assigned to the use plaintiff B. & L. Petroleum Corporation, his right to receive the monthly payments and defendant was notified of such assignment. After the cancellation of the agreements the use plaintiff made demand on Shell for damages on account of the loss of such percentages or royalties on account of the contracts so cancelled, and defendant declined to pay the same, whereupon this suit was brought.

Plaintiff grounds his action on the theory that Shell

was under duty to Baseman to continue to sell to all of the customers covered by contracts assigned to Shell until the expiration of the period of three years, and urges that Shell could not terminate the contracts for sale of products "except for just cause or reason", and on the further claim that the burden of showing justification for revocation or termination was on Shell. He argues that such an interpretation is implied from the terms of the contract and the circumstances under which it was made. In an apparent effort to avoid the effect of the plain words of the main contract and sales agreements, appellant employs a novel line of reasoning. We quote from his brief: "Plaintiff does not contend that defendant has no right whatever to cancel any of these assigned agreements. As between the defendant and the dealers, the defendant has an absolute right to do so, but, we contend, that as between plaintiff and defendant, the defendant must show justifiable cause."

Appellant refers to numerous cases dealing with rules that are applicable in construing contracts where there is an ambiguity in the writing. It is sufficient to say, on that subject, that if this contract is in fact ambiguous, a summary judgment should not have been entered under the circumstances set forth in the statement of claim, but we do not find any ambiguity and we certainly cannot create one for the purpose of applying those rules. We recognize the established canon of construction that in order to arrive at the intention of the parties the contract itself must be read in the light of the circumstances under which it was made. We may also with propriety consider the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties and rights in regard to which they negotiated: *Tucker v. Fertig*, 275 Pa. 351, 353, 119 A. 412.

We will examine the contract in the light of the circumstances insofar as they are disclosed by the plain-

tiff's claim. The main contract was entered into upon the express representation that all of the agreements for the sale of products were "cancelable by you [the plaintiff] on not more than ten (10) days' notice." The sales agreements did in fact contain such cancellation privileges. In the new and in the substitute agreements procured by plaintiff in accordance with his contract the same cancellation clause was again incorporated. The words are plain and to the point. In fact, appellant admits that there is not a word in any of the writings setting forth the agreement of the parties suggesting any abridgment on the absolute right of Shell to cancel the sales contracts. The matter being in the minds of the parties at the time they made their contract and they having dealt with that subject therein, it must be presumed that they correctly expressed their intentions, at least in the absence of an allegation of mistake or fraud. It will therefore require strong and compelling circumstances to justify a disregard of words so plain and unambiguous.

We fail to find a single item in the circumstances under which the parties contracted, including a consideration of the subject about which they were dealing, that would warrant a disregard of the contract as they wrote it. The appellant suggests that it was to its disadvantage that any of the agreements should be cancelled as it would lose its commissions or percentage, and that if the contracts were abrogated plaintiff could not sell as it was barred for three years from selling in Philadelphia and vicinity. It would seem that if the parties intended to provide such protection they would have dealt with the subject in a manner calcu-lated to produce that result. This they did not do.

Both parties were interested in finding a sales outlet. Shell had bought and paid for these very contracts and it is only reasonable to infer that it would have the same interest in continuing the contract if it could have continued it at a profit or if it were reasonable to do so.

Even on appellant's theory, inability to sell at a profit would be a justifiable cause for a rescission for that phrase is to be given a reasonable meaning. No cancellation proviso would have been required to cancel for breach of contract upon the part of the buyers of the products. In addition, there is not a suggestion that Shell has made or intends to make new contracts with the persons whose contracts were cancelled, and there is no hint of fraud upon the part of Shell. Under the terms of the contract, if Shell after cancelling these agreements had made new agreements with the parties and sold to them, it would have been liable under the contract for commissions on account thereof.

It is most apparent that Baseman relied upon the fact that it would be to the advantage of Shell to continue the contracts for they were not strangers to the business involved. They recognized the fact that if it was not to the advantage of Shell to continue the contracts it would not be willing to be bound at all hazards to a continuation; otherwise, Shell would not have been so insistent upon knowing that the contracts were subject to cancellation. We find nothing in the circumstances from which an implied contract other than that defined in the plain words of the contract can be inferred.

We note in passing that the plaintiff in its statement of claim did allege that the provision now suggested was omitted by mistake but this was the mere averment of a conclusion. There is not the slightest suggestion in the pleadings as to what the mistake was. See *Hunter & Springer v. McHose,* 100 Pa. 38; *Owen M. Bruner Co. v. Standard Lumber Co.,* 63 Pa. Superior Ct. 283, 291. Consequently, the appellant in its brief abandoned claim of mistake in the execution of the writing and relied solely on the circumstances and the implications to be drawn from the contract itself and the circumstances, detailed in the statement of claim, under which it was executed.

Judgment affirmed.