## Commonwealth ex rel. Piper *v.* Edberg et ux., Appellants.

Argued April 21, 1942.

Before Keller, P. J.,
Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

*Cyrus A. Davis,* with him *Francis E. Criner,* for appellant.

*Joseph M. Loughran,* of *Scales, Loughran & Shaw,* with him *Sigmund Rosenwasser,* for appellee.

Opinion by Baldrige, J., October 5, 1942:

This appeal is from the order of the court below awarding the custody of a female infant to its natural mother, the relator, Maria L. Piper.

There is no serious disagreement over the material facts, which may be stated as follows. In September 1940 the appellants, E. H. Edberg and Catherine Edberg his wife, placed a notice in a Pittsburgh paper expressing their desire to adopt a baby. Mrs. Mary Prunkard, the foster mother of the relator posing as a social worker, wrote under the assumed name of Mrs. Williams to the Edbergs stating she wanted to find a home for a child of one of the girls she worked among who expected to become a mother in about four months. The prospective mother was the relator, then unmarried. Mrs. Prunkard's purpose in not using her own name was to conceal from the public her foster daughter's misfortune. The baby, Mona Lee Piper, was born January 7, 1941, in a Pittsburgh hospital where the respondents, who were notified of that event, went to see it. On January 16, 1941, two days before the relator left the hospital when, according to her

testimony, she was in a weak condition mentally and physically, Mrs. Prunkard told her she had made arrangements for someone to take custody of the baby. On January 17, 1941, the relator, then 20 years of age, signed a contract at the insistence of her foster mother which she testified she had not read and did not know its contents. This contract was also signed by Marcus L. Piper. At the instance of Mrs. Prunkard, who was his landlady, he had married the relator July 23, 1940, when he was aware that she was pregnant. He admittedly was not a party to the child's illegitimate conception. The contract provided that the Pipers should give the custody and control of the baby to the Edbergs for a period of one year and that any time within that period "they ...... may adopt the said child, and we will execute any and all releases, agreements or the necessary papers in order to assist in and effectuate the said adoption ......"

The following day the Edbergs, who were not known by name to the relator, took the child. A month later the relator who had grown stronger and desired to obtain the possession of her baby, started an investigation to learn its whereabouts. Her foster mother, who had engineered the whole scheme from the time she knew the relator was pregnant, refused to give her any information and she was unable to ascertain where the child was from other sources. Finally about December 9, 1941, Mrs. Prunkard told her that the Edbergs had her baby. She then called respondents by telephone and make a demand for the child, which was refused.

A petition for a writ of habeas corpus was signed and sworn to on December 26, 1941, but under the rules of the Court of Common Pleas of Westmoreland County it could not be presented until December 30, 1941. In the meantime, unknown to the relator or her counsel, a petition was presented to the orphans' court of that county for the adoption of the baby and it was served

on the relator December 29, three days after she had signed the writ of habeas corpus but one day before it was presented to the court. The court of common pleas after a full hearing awarded the custody of the child to the natural mother. This appeal that followed raises two questions: (1) Has the court of common pleas jurisdiction to issue a writ of habeas corpus and decree the custody of the minor child while an application for adoption of the child is pending in the orphans' court; and (2) Was the order awarding custody of the relator in the best interest of the child's welfare?

(1) The appellants concede that they have been unable to find a case that expressly holds that the court of common pleas has exceeded its jurisdiction. The habeas corpus writ was granted by virtue of the provisions of section 13 of the Act of February 18, 1785, 2 Sm. L. 275, 12 PS §1888, authorizing the issuance of a writ in all cases where any person not being committed or detained for any criminal or supposed criminal matter shall be confined or restrained of his or her civil liberty. The orphans' court by the Act of April 4, 1925, P. L. 127, §1, 1 PS §1, was given jurisdiction in adoption proceedings. That statute, however, does not in any way impinge, or deprive the court of common pleas of, its jurisdiction over the custody of children. Compare *Commonwealth ex rel. Stark v. Stark*, 97 Pa. Superior Ct. 41, 47.

The purposes of the two statutes are different. The one pertains to the adoption of persons, creating a new status of relationship between the minor or adult, as the case may be, and the adopting parents: 1 Am. Jur., Adoption of Children, §2; while the Act of 1785, supra, relates to the granting of writs of habeas corpus so that relief may be afforded when one is illegally confined or restrained. Generally the basis for the issuance of a writ is an illegal physical detention, but that matter need be given little attention when a writ is sued out for a detention of a child. In that event the

paramount question to be determined is its best welfare: 25 Am. Jur.; Habeas Corpus, §78.

Habeas corpus has been recognized as the approved remedy since very early times without deviation to determine the right of custody of children: *Commonwealth v. Addicks,* 5 Binney 520. *Hixon's Appeal,* 145 Pa. Superior Ct. 33, 20 A. 2d 925; and *Commonwealth ex rel. Derr v. Derr et al.,* 148 Pa. Superior Ct. 511, 25 A. 2d 769, are more recent cases sanctioning this procedure. The relator having alleged that the respondents were illegally restraining the infant in question, the writ of habeas corpus was a correct remedy and the only court that had jurisdiction was the common pleas.

We come now to appellants' second position. They do not contend that the relator had a property right in her child's custody which she can by contract absolutely relinquish [In re *Custody of Minor Children of Dunbar A. Rosenthal,* 103 Pa. Superior Ct. 27, 32, 157 A. 342] but they assert that the contract does show that they lawfully acquired possession of the child and that she is not now restrained illegally. The court, upon petition of the relator, had the right to disregard entirely the agreement and to inquire into and determine whether the child's best welfare and interest would be better served by having respondents retain custody of her or give her to the natural mother; that was the paramount issue: *Hixon's Appeal,* supra. The court found, as appellants state, that all the parties to this controversy are reputable, standing well in their respective communities and there are no religious differences involved. Judge LAIRD did say in his opinion that the proof of the best interests of the child slightly favors the respondents but that "it will not or does not outweigh the fact that the relator is the natural parent and that the law of this Commonwealth and the authorities seem to hold that everything else being equal the rights of the natural parent to the custody of her offspring should be recognized and sustained." Courts

in adoption proceedings are quite uniform in favoring the natural rights of a parent by holding that every intendment should be made in favor of a parent's claim.

We have given great weight to what has been said by the learned court below, but the ultimate responsibility rests with us to determine from all the evidence who should have the care and custody of the child: *Commonwealth ex rel. Ganster v. McGee et ux.*, 103 Pa. Superior Ct. 12, 14, 157 A. 345. In the case before us the reputation of the relator has not been attacked in any way nor does it appear, except for her one departure from rules of morality prior to her marriage, that there has been just cause to criticize her conduct. We have considerable sympathy for Mr. and Mrs. Edberg, who have evidently taken good care of this child and have grown fond of her. On the other hand it is a serious matter, and often times unfortunate, to deprive a natural mother of her child. As we said in *Fortunes v. Manos*, 140 Pa. Superior Ct. 352, 355, 13 A. 2d 886; "It is against public policy to destroy or limit the relation of parent and child."

Considering the age and sex of this baby and all the attending circumstances we concur in the final conclusion reached by the learned court below that the child's best interests will be served by giving her in charge of the natural mother, who is well qualified to care for her little daughter for whom she has a maternal affection.

Order of the court below is affirmed at appellants' costs.