## Commonwealth ex rel. McDonald, Appellant, v. Smith.

Argued November 19, 1951. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER,
JJ.

*Harry A. Estep,* with him *James T. Philpott,* for
appellants.

*Alan D. Riester,* with him *William W. Milnes* and
*Brandt, Riester & Brandt,* for appellees.

OPINION BY ROSS, J., January 17, 1952:

This is a habeas corpus proceeding involving the
custody of a four-year-old child. The contest for cus-
tody is between the father and the maternal grand-
parents.

The father, Dale E. McDonald and Dorothy Smith,
daughter of Charles G. and Florence Smith, the ap-
pellees, were married on March 17, 1944. One child,

Penelope Ann, was born of this marriage on September 22, 1947. The mother died on November 7, 1947, and after her death McDonald went to live with her parents, taking the child with him. He lived with them until he married Jessie Wilson on December 16, 1949, at which time he established a home with his second wife.

The Smiths, the maternal grandparents, refused to permit McDonald to take Penelope Ann with him and he thereupon, on December 19, 1949, petitioned for a writ of habeas corpus to obtain custody of his daughter. The writ was issued and a hearing was held at the conclusion of which an order for custody was entered on January 4, 1950, awarding "general custody" of Penelope Ann to her father "with right of visitation in [the] maternal grandparents, who may have said child with them at their . . . contemplated home . . . on each subsequent weekend period hereafter from 7 P.M. Friday evening until 7 P.M. of the next Sunday evening . . ." It was further provided that the Smiths were to have the child with them for two consecutive weeks in July or August of each year and for one week in the fall or winter season.

The order was substantially complied with by McDonald for a period of approximately 16 months. The record discloses only three occasions when the child was not handed over to the Smiths for the weekend. On two of these occasions the child was ill and under the care of a physician; on the third occasion McDonald refused to give the child up for Christmas. This latter incident led the Smiths to take steps to have the father cited for contempt, but the matter was apparently adjusted without formal action by the court.

On May 10, 1951, the father, joined by his present wife, filed a petition for rehearing in the custody case, asking that the court revoke or modify its order with

respect to the rights of "visitation" granted to the grandparents. After hearing, the petition was dismissed and this appeal was taken.

We are agreed that the order of the court below must be modified. The Act of July 11, 1917, P. L. 817, 12 PS 1874, empowers this Court, in a habeas corpus proceeding for the custody of a child, to consider the evidence and make such order as the merits of the cause shall indicate. We may affirm, modify or reverse the order of the court below. "Lacking prescience, the choice is always difficult. Nonetheless, we strive constantly to lay aside all other considerations, and to seek earnestly for that conclusion which will best serve the future interests and the permanent welfare of the child. This is the guiding star in formulating a decision. Com. ex rel. v. Daven, 298 Pa. 416, 148 A. 524." *Com. ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 562, 40 A. 2d 881.

In *Com. ex rel. Flannery v. Sharp,* 151 Pa. Superior Ct. 612, 30 A. 2d 810, the paternal grandparents sought to obtain partial custody of their seven-year-old grandson. The respondents were the mother of the boy and her second husband. The deceased son of the relators had been the father of the child. Mother and child had lived with the relators until the mother remarried and left with the child to establish a new home with her husband. The court below entered an order directing that the grandparents be authorized to have "custody" of their grandchild at their home on alternate Saturdays from 9 A.M. until dark. We reversed the order and denied the writ, stating at page 617: "The health and welfare of a child must not be shattered in the crossfire of supposedly conflicting legal rights to its custody. Despite the fact that grandparents may have become so deeply attached to a child that it will be a real hardship to be deprived of his society, sympathy

for them cannot be permitted to interfere with the best interest and welfare of the child. While there may be little difference in the physical and material conditions in the two homes and in the financial ability of the respective parties to support and educate the child, the right of a parent to the custody of a child, all other conditions being equal, should incline the scale in the parent's favor: Com. ex rel. Welsh v. Welsh, 96 Pa. Superior Ct. 426. *Such custody, as between parent and grandparents, must be exclusive and uninterrupted, even to the refusal of visitations, when the welfare of the child is endangered by irreconcilable differences existing between them.*" (Italics supplied.)

Our determination is to be made with attention centered on the "welfare and interest" of the child. Without doubt that phrase connotes more than mere physical well being. There exists between the Smiths and the father of the child a deep and apparently irreconcilable animosity. Mrs. Smith testified that she felt from the bottom of her heart that if it had not been for McDonald and his family, her daughter Dorothy would still be alive. She testified that she would not talk to him, that if he had anything to say to her it should come through her lawyer. The litigation (including the contempt proceeding) and the onerous order which resulted have, of course, done nothing to ameliorate the situation. Under such circumstances, the evil of the order under attack is obvious. It engenders a contest for the child's affection, a contest which can lead only to the detriment of the child. It is not in the best interest of the child to subject her to an atmosphere of hate and estrangement, nor to factions competing for her favor on different days of the week.

We think that the order of the court below goes far beyond extending to the grandparents the right of

"visitation". The Smiths were given full and complete control of the child for approximately 125 days a year. Although divided custody is not bad per se (*Com. ex rel. v. Strickland,* 27 Pa. Superior Ct. 309, 314), it is not a desirable arrangement. It is tolerated as between the parents of a child, assuming both are proper persons, because it is against public policy to destroy or limit the relation of parent and child. *Com. ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 355, 13 A. 2d 886; *Com. ex rel. Piper v. Edberg,* 150 Pa. Superior Ct. 378, 28 A. 2d 460. However, this principle of public policy is not involved in a contest between a parent and grandparents for the custody of a child.

"Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare. Com. ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353. Experience has shown that generally a child's welfare is best promoted by entrusting its future to its parents. This experience is the basis for the principle that prima facie the parent is entitled to custody, and from this rule we depart only when we are constrained by the most compelling reasons. Com. ex rel. Keenan v. Thomas, 151 Pa. Superior Ct. 131, 30 A. 2d 246." *Com. ex rel. McTighe v. Lindsay,* supra. In this case there is no reason for depriving the father of the complete and uninterrupted custody of his daughter.

The order of the court below refusing to modify the original order is reversed, and the provision relative to "visitation"—in effect partial custody—by the grandparents is eliminated.