## Nauman Adoption Case.

318

Argued November 15, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Alvin J. Porsche,* for appellants.

*Frank I. Gollmar,* with him *Mulvihill, Gollmar & Grier,* for appellees.

OPINION BY WRIGHT, J., January 14, 1955:

This is an appeal from an order of the Orphans' Court[1] of Allegheny County awarding custody of a six year old girl to her paternal grandparents, by whom she had been regularly adopted. Appellants are the maternal grandparents, and temporarily had custody of the child at the time of the adoption proceeding.[2] The adoption decree, dated April 9, 1953, was entered after a full hearing at which the adopting parents, the natural father, the natural mother, and the maternal grandmother all testified. Both of the natural parents (who are divorced) consented to the adoption. Exceptions filed to the decree by the maternal grandparents were dismissed by the Court en banc on July 13, 1953. No appeal was taken.

The present petition for a writ of habeas corpus was filed April 2, 1954. It sets forth that, following the decree of adoption, the child remained in the custody of the maternal grandparents who refused to surrender her to the petitioners. A hearing was held on said petition, at which time the natural mother sided with appellants and attempted to withdraw her consent to the adoption. The court below found that the mother's

---

[1] "The orphans' court shall have exclusive jurisdiction of . . . The determination of the right to the custody of a minor in connection with any proceeding for his adoption . . ." Orphans' Court Act of August 10, 1951, P. L. 1163, Section 301(8), 20 PS §2080.301. Authority to award a writ of habeas corpus is set forth in section 703 of the Act (20 PS §2080.703).

[2] In view of this potentially troublesome circumstance, the court below might well have awarded a writ of habeas corpus immediately.

consent was "unconditional and voluntary" and that the best interests and welfare of the child would be promoted by placing her with the adopting parents.

Appellants set forth in their brief that this appeal involves the following questions: "1. Whether the interests and welfare of the minor child would best be served by vacating the decree of adoption and thereby allowing the custody of the said minor child to remain with the Appellants, the maternal grandparents of the said minor child, with whom the said minor child has spent most of its life? 2. Whether the natural mother's consent was given to the adoption of said minor child upon the deceitfully expressed intentions of the natural father of the said minor child which vitiated the consent so given and thereby operated as a fraud upon the Court granting the Decree?"

What appellants are expressly attempting is to vacate the adoption decree. No appeal having been taken, the validity of the adoption is res judicata and the decree is not subject to collateral attack: *Rollo v. Bell*, 265 Pa. 503, 109 A. 159. The new status created by adoption cannot be stricken down because of regret of a parent who consented thereto: *Young's Adoption*, 259 Pa. 573, 103 A. 344. In the adoption proceeding the natural mother testified that she was consenting "Because I think the baby should have a place that she can call her home, and she needs it for her mental welfare and her health and everything. She has never known a real home . . ." She now contends that she was led to believe by her ex-husband that he would re-marry her and that appellees would thereupon relinquish custody of the child. This story was strongly denied, and evidence was produced that the natural mother voluntarily asked appellees to adopt the child. The hearing Judge did "not give credence to the contention or the testimony of the child's mother that her

consent to the child's adoption was obtained by fraud or deceit". Our review of the record indicates that the consent was freely given, and that fraud was not committed upon the lower court. See *Montgomery Adoption Case*, 167 Pa. Superior Ct. 635, 76 A. 2d 240.

The factual situation in the case at bar is similar in many respects to that in *Commonwealth ex rel. Piper v. Edberg*, 346 Pa. 512, 31 A. 2d 84. There the natural mother sought to secure custody of her infant daughter from the adopting parents. As is the case here, a final decree had been entered in the adoption proceedings. The Court of Common Pleas found "that the proof of the best interests of the child" favored the respondents, but felt that this circumstance was offset by the fact that the relator was the natural mother, and therefore awarded the child to her. The Supreme Court[3] said: "In disposing of this appeal we cannot ignore the existing fact that by a final decree Mona is now the adopted child of the appellants . . . After a careful reading of the record we agree with the conclusion of the court of common pleas that the best interests of the child require that it remain with its adopting parents".

The court below properly recognized that the paramount consideration in a habeas corpus proceeding is the best interests and welfare of the child. See *Commonwealth ex rel. Donie v. Ferree*, 175 Pa. Superior Ct. 586, 106 A. 2d 681. Appellants produced testimony that the child was attended by a physician who asserted that she had a heart murmur and suffered from emotional instability. They also attempted to show that she has such a strong attachment for her mother

---

[3] Reversing the Superior Court which had affirmed the order of the lower court. See *Commonwealth ex rel. Piper v. Edberg*, 150 Pa. Superior Ct. 378, 28 A. 2d 460.

(who presently resides with appellants) that her removal would be disturbing. In his well considered opinion, President Judge BOYLE said: "It is difficult to accept any of these contentions as valid in view of the testimony of the child's mother in the adoption hearing . . . This contention of the child's having a heart murmur and a condition of emotional instability was not supported by competent evidence. It would seem to the Court that if the heart murmur involves a serious condition which would be aggravated by a transfer of the custody of the child to her paternal grandparents, the respondents would certainly have produced the attending physician to support their own statements. The condition of emotional instability in a child is one that common knowledge teaches us is usually the result of an unstable environment. On the basis of the record this would augur in favor of the child's transfer of custody to her paternal grandparents".

In *Commonwealth ex rel. Schofield v. Schofield*, 173 Pa. Superior Ct. 631, 98 A. 2d 437, we said: "However, we are not unmindful of the fact that the hearing judge had the opportunity of seeing and hearing the witnesses in this case. Weight is to be given to the fact that the defendant appeared before him and he had full opportunity to pass upon her ability and character". The evidence here shows that the child has been shuttled from one home to another, at times with the natural parents, and at times with either the paternal or maternal grandparents. During certain periods, the whereabouts of the mother were unknown. Referring to the testimony of the maternal grandmother, the hearing Judge stated that "it amply warrants the finding that the child's mother was leading a disorderly life". The facts as found by the court below fully support its conclusion "that the best interests and welfare of the child will be promoted by her

paternal grandparents' assuming her custody, care, maintenance, training, education and protection in the wholesome surroundings which they will provide". We are not empowered "to nullify the fact-finding function of the hearing judge": *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350.

Decree affirmed.