192 Pa. Superior Ct. 1 (1960)
Commonwealth ex rel. Goodman
v.
Dratch et ux., Appellants.
Superior Court of Pennsylvania.
Argued December 14, 1959.
March 24, 1960.
Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
*2 Lionel Savadove, with him Sylvan H. Savadove, for appellants.
No argument was made nor brief submitted for appellees.
OPINION BY ERVIN, J., March 24, 1960:
This appeal is from an order of the court below allowing visitation to David Goodman and Rose Goodman, maternal grandparents of Michael Dratch, their six-year old grandson.
Estella Dratch, the natural mother of Michael Dratch and the only daughter of the Goodmans, died March 21, 1957. For approximately a year after the death of his mother, Michael lived with his grandparents, the Goodmans. The father, Joseph Dratch, paid the Goodmans for the maintenance of his son, Michael. He visited Michael every evening. Then Joseph Dratch and Ruth Dratch were married and they established a new home for themselves and Michael in Elkins Park, Pennsylvania.
Bitterness and enmity arose in the hearts of Michael's elders and Michael was forbidden the sight or sound of his grandparents  even their gifts. A psychologist testified that Michael was emotionally disturbed and it was his opinion that any right of visitation, no matter how small, might at this time be in conflict with the best interests and welfare of Michael. He also felt that at some later time "it would be very nice if the family could get together and he could once more see his grandparents and other relatives." He also said: "I think then it would be to his best interests."
*3 It is true that in Com. ex rel. Flannery v. Sharp, 151 Pa. Superior Ct. 612, 30 A. 2d 810, we said: "Such custody, as between parent and grandparents, must be exclusive and uninterrupted, even to the refusal of visitations, when the welfare of the child is endangered by irreconcilable differences existing between them." In that case, however, the seven-year old grandson of paternal grandparents refused to comply with the court order to visit the grandparents. When questioned by the court as to why he did not wish to visit the grandparents, he replied "Because they fight my mother." So far as we can determine from the present record, Michael does not have any objection to visiting his grandparents, the Goodmans. The record indicates that there was great love and affection between the child and the Goodmans. It must be remembered that the Goodmans occupied the position of parents to the child for a period of one year immediately after the death of the child's mother. It is also true that in Com. ex rel. McDonald v. Smith, 170 Pa. Superior Ct. 254, 85 A. 2d 686, we reversed an order of the court below and eliminated the provision for "`visitation'  in effect partial custody  by the grandparents. . . ." In that case we said, at page 258: "We think that the order of the court below goes far beyond extending to the grandparents the right of `visitation'. The Smiths were given full and complete control of the child for approximately 125 days a year." In the present case, the order provided for visitation between the hours of 2:00 p.m. and 4:00 p.m. every third Saturday. In a year's time there would be 17 visits of two hours each or a total of 34 hours. This is not a divided custody. The order provides for visitation and visitation only. We consider it to be almost inhuman to completely isolate the child from his grandparents. If the parties will cooperate with heart and hand for Michael's best interests, the order will be a help and not a hindrance *4 in the development of Michael's promising personality. Unless there be some compelling reason, we do not believe that a grandchild should be denied visitation to his grandparents. We caution the grandparents, however, that they must not say or do anything which might be considered by the child as detrimental to his father and stepmother. Proof of such conduct on their part should move the court below to deny all visitation rights.
Order affirmed.