## List Adoption Case.

504

Argued May 26, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*L. Ivan Hudson,* with him *Errol Fullerton,* for appellants.

*W. Walter Braham,* with him *Braham & Mitsos,* for appellee.

OPINION BY MR. JUSTICE JONES, June 30, 1965:

This is an appeal from a decree of the Orphans'
Court of Lawrence County which vacated a decree of
adoption of a minor child entered by the same court
in 1961.[1]

William Dale List (the child), was legitimately
born March 2, 1953, in the city of New Castle, Lawrence
County, his parents being Harry N. List (natural fa-
ther), and Joanne List (natural mother). On March
11, 1955, the natural parents of the child were divorced
and the child thereafter lived for the most part with
his mother until the summer of 1961. The natural
mother was having difficulty, through lack of steady
employment, to support herself and the child[2] and was

---

[1] The judge who entered the decree of adoption in 1961 has
retired and the proceedings to vacate the decree were heard before
his successor.

[2] The natural father also contributed to the child's support.

desirous of entering the Women's Army Corps of the United States Army but she was informed that her application for enlistment could not be considered so long as she had a dependent child. The natural mother then contacted the paternal grandparents of the child—Harry W. and Martha A. List—and requested that they adopt the child, a request to which they readily agreed. The natural mother then contacted Attorney Fullerton of New Castle, the paternal grandparents' counsel, who prepared a petition for adoption for presentation to the Orphans' Court of Lawrence County.

Prior to the presentation of that petition, Attorney Fullerton prepared a written form of consent to be signed by each of the natural parents. In pertinent part, the written consent of the natural mother recited: "That she is the mother of William Dale List, a minor, born March 2, 1953 in the City of New Castle, Lawrence County, Pennsylvania, as the natural son of Joanne List, nee Joanne Miller; and that she consents to the adoption of the said William Dale List by Harry W. List and Martha A. List, his wife, of 3939 Ellwood Road, New Castle, Pennsylvania; that she waives and releases any and all rights over the care, custody and control of said child whatsoever; and she does not desire to be present at the hearing held in regard to the adoption of the said William Dale List and wishes to be excused therefrom."

When the natural mother, with her sister, first visited Attorney Fullerton's office she discussed with him what the result of her signing this consent would be. Attorney Fullerton testified as to this matter: "I told her and advised her that she had absolutely no rights, if she once signed [the] consent and the adoption was approved—and I [informed her] that she was making a mistake or she should go slow—but she insisted that she was going to enter the armed services

and that was her interest; not her child—that was my opinion of it at the time . . . . I stated that I advised her [the natural mother] that when she signed this consent and the adoption was approved—all her rights were terminated." Apparently at that time the natural mother told the attorney she wanted the child to be adopted temporarily and that, upon her discharge from the armed services, she wanted the child to be returned to her. After being advised by Attorney Fullerton of the finality of the grant of an adoption and of the impossibility of a temporary adoption the natural mother left his office without signing any consent. Shortly thereafter, the natural mother returned to Attorney Fullerton's office and at that time executed the consent.

On October 25, 1961, the petition for adoption, to which were attached the written consents of both natural parents, was filed and presented to the Orphans' Court of Lawrence County. After a hearing, the court, on November 7, 1961, decreed the adoption of the child by his paternal grandparents. The decree of the court read as follows: "Now, this 7th day of November, 1961, upon consideration of the allegations contained in the petition in the above entitled matter, the exhibits and testimony before this Court, therefore, on motion of Errol Fullerton, Attorney for the Petitioners, it is hereby ordered, adjudged and decreed that the prayer of the petitioners, Harry W. List and Martha A. List, his wife, be granted, and that the said minor child shall retain the name of William Dale List; and that he shall have all the rights and shall be subject to all the duties of the child and heir of the said Harry W. List and Martha A. List, his wife, according to the provisions of the Act of the General Assembly in such case made and provided. By the Court, John G. Lamoree, P. J." No appeal from that decree was taken.

On June 29, 1964—over two and a half years after the decree of adoption—the natural mother, who was then remarried, presented a petition to the Orphans' Court of Lawrence County to vacate the decree of adoption. In that petition she averred the decree of adoption was invalid because: (a) she had not been required to be present at the adoption hearing, was not examined by the court nor was any reason given by the court for dispensing with her testimony; (b) the court did not make any findings of fact, did not state that it was satisfied of the truth of the statements in the adoption petition, did not find that the welfare of the child would be promoted by the adoption and did not find that the requirements of the law regarding procedure in cases of adoption had been complied with; (c) her consent was not the intelligent, voluntary and deliberate consent required by law inasmuch as it was represented to her that the adoption was a mere formality to comply with United States Army requirements and that the child would be returned to her upon her discharge from the armed services. After answer filed, the court held a hearing and vacated the decree of adoption. In so ruling, the court found that the decree of adoption did not conform with the provisions of the adoption statute and that the natural mother's absence from the adoption hearing rendered the proceedings invalid. The validity of the decree vacating the adoption decree is now before us for determination.

In determining this appeal certain principles of law must be kept in mind: (1) an adoption decree entered by a court having jurisdiction over the subject matter and the parties is generally immune from collateral attack, particularly where the record shows a substantial compliance with the adoption statute; (2) where the record in the adoption proceedings affirmatively reveals a lack of jurisdiction, then the adoption

decree is subject to collateral attack; (3) notice to a natural parent of the adoption proceedings and the consent of a natural parent, where necessary, are jurisdictional prerequisites in an adoption proceeding; (4) when an adoption decree is collaterally attacked, the entry of the decree raises a presumption of its validity and regularity and an implication arises that the court did find the necessary facts and did perform all the steps essential to the jurisdiction of the court;[3] (5) the burden is upon the person attacking an adoption decree to establish its invalidity by clear and convincing evidence.[4] See: 2 Am. Jur. 2d Adoption, §§68-82, and cases collected therein.

At the outset we must examine the legislative mandate to our adoption courts as to the bases upon which an adoption decree may be predicated. The statutory provisions[5] require that the court be *satisfied* that (a) the statements in the adoption petition are true, (b) the welfare of the person to be adopted will be promoted by the adoption and (c) the requirements of the statute have been complied with and, *if so satisfied,* the court "shall make a decree so *finding*"[6] and then it may grant the adoption.

---

[3] As between parties to the proceedings "all things are presumed to have been rightly done in a court of record": *Seechrist v. Baskin,* 7 W. & S. 403.

[4] See: *In re Miner Estate,* 359 Mich. 579, 103 N.W. 2d 498.

[5] Act of April 4, 1925, P. L. 127, §4, as amended by the Act of June 30, 1947, P. L. 1180, §3, as amended by the Act of August 26, 1953, P. L. 1411, §5, 1 P.S. §4.

[6] Emphasis supplied. It is highly significant that §4 of the Act of 1947, supra, eliminated the phrase "and reciting the facts at length" as required under §4 of the 1925 Act, supra. To "find" is to ascertain by judicial inquiry: *State v. Bulkeley,* 61 Conn. 287, 23 A. 186, 190; *Potterton v. Condit,* 218 Mass. 216, 105 N.E. 443, 444; *State v. Beloit,* 74 Wis. 267, 42 N.W. 110, 111; *School District No. 7 of Wallowa County v. Weissenfluh,* 236 Ore. 165, 387 P. 2d 567, 569.

510

The thrust of the initial challenge to the instant adoption decree is that such decree fails to make a "finding" that the statements in the adoption petition were true, that the welfare of the child would be promoted and that the requirements of the adoption statute had been met. The decree was entered after a hearing at which the child proposed to be adopted, the adopting parents and two witnesses[7] were present and at which the written consent of both natural parents attached to the adoption petition were offered and received in evidence. The decree recited that it was entered after "consideration" by the court "of the allegations [in the adoption petition], the exhibits [i.e., the written consents] and testimony [i.e., that of the adopting parents and the two character witnesses]." While we have said that the law of adoption being statutory, must be strictly followed (*Maisels Adoption Case,* 395 Pa. 329, 149 A. 2d 38; *Dougherty Adoption Case,* 358 Pa. 620, 58 A. 2d 77), the highly technical and strict construction urged by appellee and followed by the court below is completely unrealistic and unjustified.[8] An examination of the decree unequivocally reveals that, as the result of a judicial inquiry by the court which encompassed, in the language of the decree, the averments of the petition, the contents of the written consents and the testimony, the court entered the decree of adoption. Such decree, while it might have been

---

[7] These two witnesses testified that the adopting parents were providing a proper home for the child.

[8] Cf. *Brown's Adoption,* 25 Pa. Superior Ct. 259, wherein the Court said: "'. . . their [adoption statutes'] construction should not be narrowed so closely as to defeat the legislative intent which may be made obvious by their terms, and by the mischief to be remedied by their enactment.'" (25 Pa. Superior Ct. at 262). It must be noted that no appeal was taken from the adoption decree and the matter is now raised as a *collateral* attack on the decree.

more artistically drawn, was in substantial compliance with the statutory requirements. *Adoption of Margaret Nolan,* 113 Pa. Superior Ct. 198, 172 A. 447 (decided under the 1925 Act, supra), relied on by appellee and the court below, does not compel the conclusion that *this* decree was invalid.

It might have been better had this decree recited *specifically* its conclusions but the instant decree of adoption substantially complies with the legislative mandate. The supertechnical reason assigned by appellee for the vacation of this decree finds no support either in law or common sense.

Next it was urged in the court below and, impliedly so found, that the fact that the natural mother of the child was not present at the adoption hearing vitiates and destroys this decree of adoption. Under the statute it is provided that ". . . all the persons whose consent is necessary . . . must appear in person and be examined under oath by such court or judge." However, the statute then provides that "the personal appearance of the natural parents . . . may be dispensed with in the discretion of the court or judge hearing the petition . . . provided the duly executed consents of such persons in writing have been filed with the petition . . . ."

Certain facts are undisputed: (1) the natural mother did not attend the hearing; (2) the natural mother did execute a written consent to the adoption; (3) this written consent contained the following language: "[I do] not desire to be present at the hearing held in regard to the adoption of the said William Dale List and [wish] to be excused therefrom"; (4) the natural mother stated to Attorney Fullerton that she did not want to be present at the hearing and an expression of such desire on her part was added to the written consent *at her request*; (5) the natural mother made no attempt to attend the hearing. There is absolutely

nothing on this record to indicate that the natural mother did not *know* of the hearing and the record uncontradictorily shows that the adoption proceedings were *initiated* by her.[9]

Two lower court cases (*Adoption of Thomas J. Coyle,* 48 Montg. 223; *Adoption of Lorraine Blahut,* 22 Lehigh L.J. 272) have considered the instant problem. Their conclusion was that the adoption court could properly exercise its statutory discretion in dispensing with the presence of a natural parent at an adoption hearing on the basis that a duly executed consent of such person had been filed with the adoption petition. As President Judge HOLLAND stated in *Coyle,* supra, 48 Montg. 238: "Their presence [i.e., that of the natural parents] 'may' be dispensed with by the Court or Judge. We take it thus far the Court has the discretion to require their presence in all cases, without exception, if it deems it important. But, if the Court gets to the point where, in the exercise of its discretion it finds it unnecessary to require their presence, what reasons are proper ones to arrive at this conclusion? Whatever reason is assigned, the presence can only be dispensed with 'provided the duly executed consents of such persons in writing have been filed with the petition' . . . .

"There is only one reason specifically stated that can be assigned for exercising the discretion and that is 'if such persons reside without the jurisdiction of the court'. But then follows 'or if for any other reason the said Court or Judge deem it unnecessary'. It is not possible to conceive of language giving a wider discretion in choice of a reason. 'Any other rea-

---

[9] *Armstrong v. Manzo,* 380 U. S. 545, 550, 85 S. Ct. 1187, 33 L.W. 4349, wherein the Supreme Court, in an adoption case, held that the failure to give the natural father of the child sought to be adopted notice of the adoption proceedings "violated the most rudimentary demands of due process of law" is clearly inapposite under the factual situation in the case at bar.

son' whatever, that appeals to the Court or Judge hearing the case, as a proper one, may be assigned for dispensing with the presence of the person or persons whose consent is necessary.

"As indicated above the reason assigned for dispensing with the presence of . . ., the natural father, in this case was because his consent was 'duly appended in writing to the petition'. The petitioner argues that this being the proviso only upon which a reason can be assigned for dispensing with his presence, that the fulfilling of the proviso cannot be assigned as a reason itself. We cannot see the force of this argument when the Act clearly says that it can be done for 'any reason the Court or Judge deem' a proper one. As a matter of fact, what better reason could a Court find for dispensing with the presence of the surviving parent at the hearing than because his admittedly genuine, unequivocal and clear written consent has been filed with the petition. He having done all that was necessary as far as his connection with the proceeding is concerned, and the best proof possible of his act being in evidence before the Court, what purpose could be served by having him present at the hearing? At most he could be called to duplicate in the form of testimony what was already of record in the proceeding." We hold that the Court has the discretion to dispense with the presence at the hearing of the person or persons whose consent is necessary.

The fact that a previously given consent by a natural parent may be withdrawn even up to the time of the adoption hearing (*Susko Adoption Case*, 363 Pa. 78, 69 A. 2d 132) should not prevent the court from exercising its statutorily granted discretion *if* up to the time of hearing the consent of the natural parent has *not* been withdrawn. If a natural parent has executed a written consent to the adoption and if such parent has notice of the hearing and has not withdrawn

the consent, the court may, in its discretion, rely on the efficacy of such consent. The initiative for the withdrawal of a written consent lies only with the natural parent; absent the exercise of such initiative up to the time of hearing the court may properly assume the natural parent does not desire to withdraw the consent.

In the case at bar, the natural mother not only consented to the adoption but waived her right to be present at the hearing. Under such circumstances the court had every right to rely on her waiver and dispense with her presence at the hearing and the absence from the hearing of the natural mother in no manner vitiates this decree or justifies its vacation.

Lastly, it is urged that the consent of the natural mother was given when she was under severe economic pressure and, in consenting to the adoption, she relied upon a representation by the paternal grandmother that the adoption was to be temporary and that when she was discharged from the armed services the child would be returned to her. The appellee concedes that no intentional fraud was practiced upon her and the record unequivocally shows that the natural mother, not the adopting parents, initiated the adoption proceedings so that she might be eligible for enlistment in the Women's Army Corps of the United States Army.

An examination of the record in the court below reveals: (1) that the natural mother testified that, when she requested her former father and mother-in-law to adopt the child, the mother-in-law said "she would never keep my son from me—if I would ever remarry and could provide a good home for him", that Attorney Fullerton said the father and mother-in-law were fine people and she "would just have to trust them", that although Attorney Fullerton had explained to her that the written consent was irrevocable, she

thought it was just a "formality" and that she knew "the adoption was final, but only through a 'formality' "; (2) the natural mother's mother testified that Mrs. List, one of the adopting parents, in her presence prior to the adoption, stated that, if the natural mother remarried and had a home, the natural mother could get the child back; (3) the natural mother's sister testified that on one occasion Attorney Fullerton told the natural mother that the child could not be adopted under the condition that provision could be made for the child's return when she could provide for him and on another occasion Attorney Fullerton said he thought the natural mother could trust the adopting parents; (4) the adopting parents denied any arrangement to return the child to the natural mother; (5) Attorney Fullerton testified he met the natural mother on two occasions, advised her an adoption could not be made on a temporary basis, that once an adoption was granted she had no rights to the child and that both he and her sister advised her not to execute the consent.

The record clearly indicates that, although there was some discussion of an adoption on a temporary basis, the natural mother, prior to her execution of the written consent, was clearly instructed that the adoption would be final and would result in a severance of all of her rights to her child and, further, that her written consent was voluntarily, intelligently and deliberately given.

Bearing in mind that the welfare of a child is of paramount importance in adoption matters, even in proceedings to vacate an adoption decree,[10] the instant record is silent on this subject. On the posture of this record the welfare of the child is not put in issue.

_____

[10] See: 2 A.L.R. 2d 891, §3.

If we assume as true that the natural mother of this child had a secret understanding with the paternal grandparents that the adoption of the child by the latter was to be temporary and that, upon the natural mother's discharge from the service and the establishment of a home for the child, the child would be returned to the natural mother, then the action of the mother in executing the written consent was not only misleading to the court but, in effect, a fraud upon the court. In her consent—upon which she had every reason to believe the court would place reliance—the natural mother not only consented to the adoption but released all her maternal rights to the child. If her testimony as to the secret arrangement be accepted, then her consent was a sham whereby she sought to deceive the court into relieving her of the dependency of this child so that she could enter the armed services. Through her own actions she—according to her present testimony—led the court to create a new status for her child; it ill behooves her now to complain of this status brought about through her own fraud on the court.[11]

To accept as a valid reason to vacate this adoption the alleged secret understanding between the natural mother and the paternal grandparents would imperil adoption decrees generally. As this Court said in *Harvey Adoption Case,* 375 Pa. 1, 3, 99 A. 2d 276: ". . . a decree of adoption terminates forever all relations between the child and its natural parents, severs it entirely from its own family tree and engrafts it upon that of its new parentage: [citing a case]." Through the adoption process the natural parent-child relationship is extinguished and an entirely new parent-child status is created. Relying on the creation of this new status, thousands of persons annually enter the courts of adoption seeking to bring into their homes minor

---

[11] Cf. *Arnold v. Howell,* 98 Cal. App. 2d 202, 219 P. 2d 854.

children to whom they will bear the relationship of legal parentage and to whom they can give love and affection as though they were their own natural born children. What they seek principally is a *finality* in the creation of this new status, such *finality* as will abolish the fear that in the years ahead something will occur to extinguish the parent-child status and force them to relinquish the children they have adopted and upon whom they have lavished care and affection. If we accept as a reason to vacate an adoption decree a unilaterally alleged secret understanding we place in jeopardy and imperil adoption decrees generally.[12]

Proof of the invalidity of an adoption decree must be clear and convincing and, unless such qualitative standard of proof is met, an adoption decree should not be vacated. The evidence in the court below does not meet this standard of proof and the court below in vacating this decree committed both an error of law and an abuse of discretion.

Decree reversed.

Each party to bear own costs.

Mr. Justice EAGEN dissents.

---

[12] Cf. *Nauman Adoption Case*, 177 Pa. Superior Ct. 317, 320, 110 A. 2d 925, wherein the Superior Court said: "The new status created by adoption cannot be stricken down because of regret of a parent who consented thereto. [citing authority]."