487 P.2d 417

**In the Matter of the ADOPTION OF Laurie Marie HAMMER, Minor, and In the Matter of the Adoption of Kristina Lynn Hammer, Minor.**

**Alexandra TROSKA, Appellant,**

**v.**

**Christine KEKOVICH, Appellee.**

**Nos. 1 CA–CIV 1328, 1 CA–CIV 1329.**

Court of Appeals of Arizona, Division 1, Department B.

July 27, 1971.

Rehearing Denied Sept. 30, 1971.

Review Denied Oct. 27, 1971.

Lurie & Friedman by Steven M. Friedman, Phoenix, for appellant.

Moise Berger, Maricopa County Atty. by Elizabeth J. Stewart, Deputy County Atty., Phoenix, for appellee.

JACOBSON, Presiding Judge.

These consolidated appeals come to us from the dismissals of a natural mother's petitions to vacate orders of adoption of her two minor children, entered some five years prior to the filing of the petition.

There were originally two petitions for the adoption of the minor children involved in this consolidated matter filed in 1963 by the Maricopa County Attorney acting pursuant to A.R.S. § 8–102, subsec. B (1956), on behalf of the paternal grandparents of the children involved. These original adoption petitions were accompanied by the written consent to adoption signed by the appellant, and these adoption proceedings became final in 1964.

On October 8, 1969, appellant filed petitions to vacate the adoptions. These were not filed as independent proceedings, but rather as a part of the original adoption proceedings. These petitions alleged that prior to granting her consent to the original adoptions appellant had been informed by her physician that she suffered from a condition known as glomerulonephritis, which was terminal and because of this information she gave her consent to the adoption; that this information subsequently proved to be incorrect and therefore her consent given under this mistake of fact was invalid. There were no allegations that the adoptive parents were in any manner responsible for this medical advice being given to appellant.

Appellant also alleged the existence of a secret agreement between herself and the

adoptive parents under which the adoptive parents agreed that appellant would continue to live with the adoptive parents "as long as possible"; that appellant would continue to have full and liberal rights of visitation with her natural children and that the adoptive parents would not attempt or seek to alienate the minor children's affection from their natural mother. The petition went on to allege that this agreement was fulfilled until May of 1967 when the adoptive parents moved to the State of Michigan and there appellant's visitation rights were denied and the children's affections were alienated. It was further alleged that the adoptive parents at the time they entered into this agreement with appellant had the intention of depriving appellant of her visitation rights and alienating her children. Approximately two and one-half years later, appellant filed her petition to vacate the adoption proceedings.

Service of these petitions was made in Arizona on the then County Attorney of Maricopa County. Additional foreign service was made by personally serving the surviving adoptive parent in Fraser, Michigan, the home of the adoptive children. No appearance was made by the surviving adoptive parent in Arizona nor was an appearance made in the trial court by the County Attorney on her behalf. Appellant's petitions were dismissed by the trial court.

Before discussing the merits of this appeal, the court wishes to make some general observations concerning a decree of adoption.

■ First, we are convinced that a final order of adoption is a final judgment, subject to the same finality and standing as any other judgment of a court of competent jurisdiction. Risner v. Risner, 243 Ind. 581, 189 N.E.2d 105 (1963). This is necessary so that the myriad legal consequences which arise out of the relationship between parent and child, of which intestate succession and heirship is just one, may be applied with some degree of certainty. Moreover, from a strictly humanitarian standpoint, there must be an end to the emotional stress and strain that is involved in the natural parents' attempt to regain custody of their child. This strain is particularly acute to the adoptive child itself, who may have established strong bonds of affection and love for the adoptive parents, and to the adoptive parents who must suffer the spectre of losing their child. Also, sound reasons of public policy demand that orders of adoption have finality so as to encourage adoption of children who might otherwise be homeless. As was stated in Rhodes v. Shirley, 234 Ind. 587, 129 N.E.2d 60 (1955):

> "Few really considerate prospective parents would take a child into their hearts and homes and expose either the child or themselves to the heartache of a child's removal from their homes, after mutual ties of affection had been established, if such removal were possible for no other reason than that the natural parents had changed their minds." 234 Ind. at 597, 129 N.E.2d at 64.

A judgment of a court, which has become final may not be set aside or reopened except under the circumstances set forth in Rule 60(c), Rules of Civil Procedure, 16 A.R.S.

■ Here, there is no contention made by the appellant that the Superior Court of Maricopa County did not have jurisdiction to render the original final orders of adoption. Rather, the appellant complains of "extrinsic fraud" which allegedly goes to the obtaining of the consent of the appellant upon which the adoption proceedings were based. However, the acts upon which the appellant bases her claim of "extrinsic fraud" did not support such a charge. As to appellant's first contention, that is, her signing of the consent under the mistaken belief that she suffered from a terminal illness, this belief was not induced by any act of the adoptive parents. Thus, they are not guilty of any fraud in this respect which prevented a fair submission of the controversy. Also a mistaken

belief in one's impending death is not such a mistake as would vitiate a consent to adoption. Nelson v. Nelson, 127 Ill.App. 422 (1906); Nealon v. Farris, 131 S.W.2d 858 (Mo.App.1939).

As to the "secret agreement" alleged by the appellant, the court is convinced that such an agreement dealing with the rights of a natural parent with the adopted children after a final decree of adoption is contrary to the purpose and intent of our adoption laws and certainly detrimental to and against the best interests of the adopted children. Such laws, by judicial fiat, make the adopted child in the eyes of the law a child of the adoptive parents as if born to them in wedlock, and subject to all the rights and obligations of parent and child, including the parental right of supervision of their child's association with third persons. A.R.S. § 8–117, subsec. A; Spencer v. Franks, 173 Md. 73, 195 A. 306 (1937).

It therefore follows that a breach of such a secret agreement cannot be recognized as affording a ground for vacating the final order of adoption. As was observed in In Re List's Adoption 418 Pa. 503, 211 A.2d 870 (1965):

> "To accept as a valid reason to vacate this adoption the alleged secret understanding between the natural mother and the paternal grandparents, would imperil adoption decrees generally." 418 Pa. at 516, 211 A.2d at 877.

It is the opinion of this court that the courts of this state should prior to the granting of a decree of adoption exercise judicial vigilance in assuring the rights of a natural parent are not only adequately protected, but are also adequately considered and the enormity of severing parental ties are thoroughly brought home and understood by all parties.[1] However, once a judicial determination is made giving rise to a final order of adoption and that new relationship is allowed to mature, then the courts of this state should only nullify that new relationship for the most cogent reasons.

This court is constrained to warn the members of the bar generally that this opinion should not be relied upon as to the jurisdiction of the trial court to entertain petitions seeking to vacate a decree of adoption under the circumstances of the service obtained in this case. While the jurisdiction of the trial court was questioned in the answering brief, there was no reply brief filed in this court and for this reason the court felt it was not adequately informed so as to make a well-reasoned judicial determination on this important issue. For this reason alone, the court dealt with the merits of appellant's petition.

For the foregoing reasons, the action of the trial court in dismissing appellant's petitions is affirmed.

HAIRE and EUBANK, JJ., concur.

---

1. The court notes that the adoption laws of this state as amended in 1970 (Added Laws 1970, Ch. 205, § 2) have incorporated safeguards to assure this salutory result.