## Everett (Minor)

*David B. Gray* and *William I. English, Jr.*, for petitioner.

*Robert B. Brunner* and *Gerald F. Glackin*, for Children's Aid Society of Montgomery County, respondent.

TAXIS, P. J., March 2, 1973.—This matter comes before the court upon petition of Marion F. Lehman, seeking to vacate a final decree of involuntary termination of her parental rights to Cheryl Everett. The decree of this court complained of was entered on July 6, 1971. Mrs. Lehman complains that (1) she received no notice of the proceeding, and also (2) she has not, by her misconduct, justified the court in terminating her parental rights.

On July 21, 1959, Cheryl Everett was born to Marion F. Everett (now Marion F. Lehman) and Delbert Everett, her husband. In April 1963, Mrs. Lehman left her then husband, Mr. Delbert Everett, and went to Alabama. When she left Mr. Everett, she also left with him Cheryl Everett and another child of the same

marriage, Earl S. Everett. Following his wife's departure, the father, Delbert Everett, went to the Montgomery County, Pa., Child Welfare Service, to arrange for placement of Cheryl Everett and Earl S. Everett, her brother, and they were placed with the Presbyterian Children's Village on June 2, 1963, where they remained until they were placed in foster home care with the Children's Aid Society of Montgomery County, Pa., in September 1966. Neither the Children's Aid Society of Montgomery County nor the Child Welfare Service of Montgomery County ever had any contact with Mrs. Lehman, until after the date of the entry of this court's final · decree, terminating all parental rights of Mrs. Lehman and Mr. Everett, on July 6, 1971. Mrs. Lehman knew that Cheryl Everett was at the Presbyterian Children's Village from 1963 to 1966. She likewise knew that Cheryl Everett was under the care and custody of the Children's Aid Society from 1966 to date. Shortly after Earl had been placed with the Children's Aid Society, he had been removed from such placement and a new place was made for him at the Northern Home for Children. Mrs. Lehman knew that Earl was at the Northern Home for Children, and in July 1969, and February 1970, she was in touch with him, regarding the possibility of his joining her in Montgomery, Ala. In attempting to arrange to move to his mother's residence in Montgomery, Alabama, Earl Everett contacted the Child Welfare Service of Montgomery County, Pa., on February 10, 1970, and at that time he was told that if he would provide the proper address for his mother, the Child Welfare Service would write to Alabama to see if such arrangements could be completed. Earl then did call the Child Welfare Service office and provided the address of Mrs. Lehman as 364 Poplar Street, Montgomery, Ala. On February 13, 1970, the

Director of the Montgomery County Child Welfare Service wrote to the Child Welfare Department of Montgomery, Ala., asking them to evaluate the home of Mrs. Lehman at 364 Poplar Street, Montgomery, Ala. On March 4, 1970, a reply from the Child Welfare Department of Montgomery, Ala., was received by Montgomery County, Pa., Child Welfare Service. The reply was affirmative in nature and related that the then Mrs. Hawkins was ready to accept Earl at any time. The critical fact is that there was no mention that the address provided by Montgomery County, Pa., Child Welfare Service was defective in any way. Had there been a defective address, the Alabama authorities would have so indicated.

On June 15, 1971, the Children's Aid Society of Montgomery County filed a petition for involuntary termination of parental rights of Cheryl Everett, and a hearing was set for July 6, 1971, at 9:30 a.m., and the society was directed by the preliminary decree to attempt to give notice to Marion Everett Hawkins (now Mrs. Lehman) and Delbert Everett at their last-known addresses, by certified mail. Such an attempt was made and an affidavit of service to that effect has been filed with the court. Following hearing, a final decree of termination of parental rights was entered by this court on July 6, 1971.

In June 1971, Mrs. Lehman came back to Norristown, Pa., from Montgomery, Alabama, but never made any effort to contact Cheryl, the Children's Aid Society, or the Child Welfare Service of Montgomery County, until April or May of 1972. At this time, she was advised of the termination of her parental rights and in June 1972, the present petition to vacate the termination decree was filed. The petition is that of Mrs. Lehman only. There is no request to reopen the decree as to Mr. Everett, the father of Cheryl Everett. It is also important to note that Mrs. Lehman does not

seek custody of her child, but to reinstate her parental rights.

Mrs. Lehman's petition was filed almost one full year after the final decree had been entered and more than nine years after she left her then four-year old daughter. For all of these nine years, this mother knew of the whereabouts of her child and made absolutely no effort to visit with the child or to contact her directly. Through all these nine years, she had personal knowledge that the child was in the custody of the Child Welfare Service of Montgomery County and in the custody of the Children's Aid Society of Montgomery County, and yet she made no effort to keep them advised of her whereabouts. In her present petition, she complains that she did not receive notice of the hearing of July 6, 1971, and further that on the merits there was no grounds to enter a decree terminating her parental rights.

The Adoption Act of July 24, 1970, P. L. 620, sec. 313, 1 PS §313, provides as follows:

"The court shall fix a time for hearing on a petition filed under section 312 of this act which shall be not less than ten days after filing of the petition. At least ten days' notice shall be given to the parent or parents whose rights are to be terminated by registered or certified mail, *to his or their last known address,* or by such other means as the court may require." (Italics supplied.)

It is well stated in Pennsylvania law that one seeking to upset a court decree which is regular on its face has the burden to establish its invalidity by clear and convincing evidence. In an effort to do this, Mrs. Lehman attempts to rely on the fact that she did not receive any actual notice of the hearing which resulted in the termination decree. However, the record clearly shows and the court finds as a fact and concludes as a matter of law that the provisions of the

adoption statute with regard to notice have been scrupulously complied with in the present case. The Children's Aid Society had good reason to believe in the validity of the last-known address to which notice of the hearing was directed, and the affidavit of attempted service at such address is complete and regular on its face.

Petitioner has no one but herself to blame for her failure to receive actual notice of the hearing. For a period of nine years, the mother could have but failed to make any attempt to see the child or to contact her directly. For a like period of nine years the mother could have but failed to make the child or the Children's Aid Society of Montgomery County or the Child Welfare Service of Montgomery County aware of her whereabouts.

This court has said, in Turner Adoption, 92 Montg. 186 (1969), at page 187: "When an errant parent separates himself from his parental responsibilities . . . there is a modicum of responsibility upon him to keep his whereabouts known or run the risk of court proceedings affecting his rights."

Petitioner's complaints as to lack of notice are without merit.

On the issue of the conduct of this mother, the court concludes that this record clearly supports the finding beyond any doubt, that this mother has shown an intention of relinquishing her parental rights and has also failed to perform any of the parental duties. This record of parental indifference and continued neglect and refusal to provide essential parental care as displayed by this petitioner clearly meets the demanding standards as set forth in Jones Appeal, 449 Pa. 543 (1972).

Petitioner's own testimony indicates that since April 1963, she in no way displayed any parental interest whatsoever. Although she knew that the child was

under the care and custody of the Children's Aid Society, she made no attempt to contact the society. She alleges that she sent greeting cards, but she admits that she sent them not to the Children's Aid Society, but to her ex-husband whom she had left due to his excessive drinking and who did not reply and who had had no correspondence with her concerning this child for a period in excess of two years immediately preceding the filing of the petition for termination of parental rights. To set aside this decree, petitioner has the burden to establish the invalidity of the decree by clear and convincing evidence (List Adoption Case, 418 Pa. 503 (1965)), and to introduce sufficient, competent evidence to support grounds for revocation of such decree: Turner Adoption, supra.

This burden, petitioner has failed to carry. Her own testimony only proves her to be an unconcerned mother who has neglected to show any care or affection for this child for a period in excess of the six-month statutory period. She has not for nine years fulfilled any of her parental responsibilities toward this child. Once having had her parental rights terminated, they should not be so easily retrieved. Accordingly, the petition is dismissed.