J-S11044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF C.A.F. N/M/B C.A.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| _____ | : | |
| IN THE MATTER OF THE ADOPTION OF J.D.C. N/M/B J.T.R.M. | : | |
| | : | |
| | : | |
| APPEAL OF: B.F. | : | |
| | : | No. 1403 WDA 2016 |
| | : | |

Appeal from the Order Entered August 31, 2016
in the Court of Common Pleas of Venango County
Orphans' Court Division at No(s):  OCD No. 228-2013,
OCD No. 229-2013

BEFORE:   OLSON, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 20, 2017**

Appellant, B.F. ("Mother"), files this appeal from the order dated August 30, 2016, and entered August 31, 2016,[1] in the Venango County Court of Common Pleas, by the Honorable Oliver J. Lobaugh, President Judge, denying Mother's Motion to Strike Voluntary Parental Termination and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While the order was dated August 30, 2016, it appears that it was not docketed and entered for purposes of Pa.R.C.P. 236(b) until August 31, 2016.  **See Frazier v. City of Philadelphia**, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").

Adoption with regard to her minor sons, C.A.F. N/M/B C.A.M. and J.D.C.

N/M/B J.T.R.M. (collectively, the "Children"), and granting the Petitions for

Discontinuance or Modification of Agreement of Appellees, E.J.M. and D.R.M.

("Adoptive Parents"). After review, we affirm the trial court's order.

The trial court summarized the relevant procedural and factual history,

in part, as follows:

> In a separately-captioned dependency proceeding, this Court terminated the parental rights of [Mother] to her biological children C.A.F. and J.D.C. pursuant to a Decree entered on February 12, 2014.[2] That same day, [Adoptive Parents] entered into a Voluntary Post-Adoption Contact Agreement (hereinafter "the Agreement" or "Act 101 Agreement") with [Mother] pursuant to the Act of Oct. 27, 2010, P.L. 961, No. 101, *codified as amended* 23 [Pa.C.S.] §§ 2731 – 2742 ("Act 101"). The Agreement provides for supervised visitations to occur between the subject minor children and Mother at least four (4) times per year, subject to certain conditions.[3] The adoptions of the subject minor children were finalized on August 5, 2014.

---

[2] Mother's rights to Children were terminated by separate decrees. While the decrees were dated February 12, 2014, it appears that they were not docketed and entered for purposes of Pa.R.C.P. 236(b) until February 13, 2014. By separate decree entered the same date, the court also terminated the parental rights of J.D.C.'s father, T.C. Further, by decree entered March 4, 2014, the court terminated the parental rights of C.A.F.'s father, L.E.K. All terminations of parental rights were pursuant to petitions for voluntary termination. We note Mother was represented by counsel.

[3] Separate agreements dated February 12, 2014, and docketed February 13, 2014, were entered for each child. *See* Voluntary Post-Adoption Agreement (C.A.F.), 2/13/14; Voluntary Post-Adoption Agreement (J.D.C.), 2/13/14. In addition, Adoptive Parents and J.D.C.'s father entered an agreement on the same date.

The instant litigation was initiated by the dual Petitions of [Adoptive Parents], filed on August 31, 2015, which requested that the Agreement be discontinued, or, in the alternative, modified to include fewer visits per year. Counsel for Mother entered their appearance January 5, 2016, and filed Motions to strike the Decrees of Adoption and the Voluntary Relinquishment, and to hold a status conference. A status conference and initial evidentiary hearing were held on January 13, 2016. At the hearing, testimony was taken from the adoptive Mother as well as one Michele L. Johnston, MA LPC.[4] Counsel for Mother requested a continuance in order for more time to present evidence and to investigate the possibility of retaining a rebuttal expert witness. A second evidentiary hearing was held on July 11, 2016. At the second hearing, Mother's sole witness was one Victoria Rai Ciko, a supports coordinator with the Venango County Human Services Department.[5]

Trial Court Opinion ("T.C.O."), 8/30/16, at 1-2.

Subsequent to hearing, by order dated August 30, 2016, and entered

August 31, 2016, the trial court denied Mother's Motion to Strike Voluntary

---

[4] Michele Johnston, C.A.F.'s treating counselor, issued a report dated December 20, 2015 and marked and admitted at the hearing on January 13, 2016 as Exhibit C. This report is contained separately in the record. **See** Counselor's Report and Recommendation, 1/7/16, Exhibit A.

[5] Upon review of the record, the Notes of testimony from the July 11, 2016 hearing were not transcribed. As we stated in **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*):

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P. 1911(a). . . . It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. **Id.**

Parental Termination and Adoption and granted Adoptive Parents' Petitions for Discontinuance or Modification of Agreement. The court concurrently issued an opinion setting forth its rationale for its dispositions. By order dated and entered August 31, 2016, the trial court entered an amended order substantially similar to the original order.[6] On September 21, 2016, Mother, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[7] Thereafter, the trial court filed an Opinion of Court Pursuant to Pa.R.A.P. 1925(a) on October 13, 2016. This opinion adopted the prior opinion issued by the court concurrently with its order dated August 30, 2016, and entered August 31, 2016.

_____

[6] A review of both orders reveals only a correction as to the name of Adoptive Parents' petitions. **See** Orders, 8/31/16. Both orders express the trial court's denial of Mother's Motion to Strike Voluntary Parental Termination and Adoption and grant of Adoptive Parents' Petitions for Discontinuance or Modification of Agreement. **Id.**

[7] Mother appealed the order dated August 30, 2016, and entered August 31, 2016. **See** Notice of Appeal, 9/21/16. This order was a final, appealable order. **See** Pa.R.A.P. 341(b). The fact that an amended order was entered does not render the earlier order interlocutory. A trial court may correct errors in its own orders. **See Manack v. Sandlin**, 812 A.2d 676, 680-81 (Pa. Super. 2002); **In re Austin Trust**, 674 A.2d 293, 296-97 (Pa. Super. 1996); and 42 Pa.C.S. § 5505. Further, under certain circumstances, minor procedural missteps may be overlooked. As such, failure to file an appeal from the subsequent order dated and entered August 31, 2016 is not fatal. **See Dong Yuan Chen v. Saidi**, 100 A.3d 587, 594 (Pa. Super. 2014) (even though taking one appeal from separate judgments is discouraged, appeal was not quashed). **See also** Pa.R.A.P. 905(a)(5) (stating that the premature filing of a notice of appeal would be treated as proper once a final, appealable order was entered).

On appeal, Mother, through counsel, raises the following issues for our review:

1. Whether the trial court erred as a matter of law or abused its discretion when the court denied [Mother]'s motion to strike termination of parental rights and adoption[?]

2. Whether the trial court erred as a matter of law or abused its discretion when the court terminated the adoption agreement in [sic] which gave [Mother] four visits every year with the minor children[?]

Mother's Brief at 5.

"Our standard in reviewing an appeal from an order relating to termination of parental rights is to determine if the record is free from legal error and if the factual findings are supported by the evidence." *In the Interest of J.F.*, 862 A.2d 1258, 1260 (Pa. Super. 2004) (citations omitted). If the orphans' court's findings are supported by competent evidence, they should not be disturbed. *In re M.L.O.*, 490 Pa. 237, 241, 416 A.2d 88, 90 (1980) (citing *In re William L.*, 477 Pa. 322, 383 A.2d 1228, *cert. denied*, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978)). *See also In re D.J.Y.*, 487 Pa. 125, 408 A.2d 1387 (1979). Further, because the orphans' court sits as the fact-finder, it determines the credibility of witnesses, and we will not reverse its credibility determinations absent an abuse of discretion. *In re M.J.S.*, 903 A.2d 1, 8 (Pa. Super. 2006).

Further, as set forth by our Supreme Court:

> A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary and deliberate. *See Susko Adoption Case*, 363 Pa. 78, 83, 69 A.2d 132, 135 (1949) ("consent prescribed by the Adoption Act is a parental consent that is intelligent, voluntary and deliberate."); *accord Chambers Appeal*, [452 Pa. 149, 153, 305 A.2d 360, 362 (1973) ] ...; *In re Fritz*, 460 Pa. 265, 333 A.2d 466 (1975).

*In re M.L.O.*, 490 Pa. at 240, 416 A.2d at 89–90.

Similarly, in reviewing an order denying a petition to vacate an adoption decree, we review for whether the trial court abused its discretion or committed an error of law. *Adoption of Christopher P.*, 480 Pa. 79, 86, 389 A.2d 94, 98 (1978). Our review is limited to determining whether the trial court's findings are supported by competent evidence in the record. *Id.* An adoption decree is presumed to be valid, and the person seeking to vacate it bears the burden of showing its invalidity by clear and convincing evidence. *In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1286-87 (Pa. Super. 2011) (*per curiam*); *Chambers Appeal*, 452 Pa. 149, 153, 305 A.2d 360, 362 (1973).

We have explained, "[i]n the absence of fraud, an adoption will be revoked if it is in the best interest of the child to do so, as the welfare of the child is of paramount importance, even in proceedings to vacate an adoption decree." *In re Adoption of R.J.S.*, 889 A.2d 92 (Pa. Super. 2005) (*citing List Adoption Case*, 418 Pa. 503, 516, 211 A.2d 870, 877 (1965)).

On this topic, our Supreme Court stated:

This Court has long been aware of this need to accord finality to statutorily and judicially decreed adoptive relationships.

- 6 -

Particularly where . . . an appellant seeks to vacate a facially valid, final adoption decree, we have noted the substantial burden of proof which must be met to "justify disturbing the integrity of that decree." **Chambers Appeal**, [452 Pa. 149, 153, 305 A.2d 360, 362 (1973)]. In **Chambers Appeal**, **supra**, a natural mother appealed from dismissal of her petition to vacate a final adoption decree filed nine months after entry of the decree of adoption. In rejecting the natural mother's attempt to withdraw her consent, we stated:

> "The natural mother's attempt to withdraw her consent came much too late. Many important rights and relationships involving the child and the adoptive parents had been conclusively created and permanently established.
>
> . . .
>
> As this Court has previously said: '. . . a decree of adoption *terminates forever all relationships between the child and its natural parents*, severs it entirely from its own family tree and engrafts it upon that of its new parentage: **Schwab Adoption Case**, 355 Pa. 534, 536, 50 A.2d 504, 504[(1947)].' (Emphasis added.) **List Adoption Case**, **supra**[, 418 Pa. 503, 516, 211 A.2d 870, 877 (1965)]; **Harvey Adoption Case**, [375 Pa. 1, 3-4, 99 A.2d 276, 277-78 (1953)]. Moreover, this statutorily created and judicially decreed relationship between adoptive parents and the child must be given 'such *finality* as will abolish the fear that in the years ahead something will occur to extinguish the parent-child status and force [the adoptive parents] to relinquish the children they have adopted and upon whom they have lavished care and affection. **List**, **supra** 418 Pa. at 517, 211 A.2d at 877.
>
> Clearly, this wise, necessary and justified 'finality' of all adoption decrees, statutorily and judicially mandated, precludes appellant at this late date from imperiling and jeopardizing the adjudication of adoption. Our adoption statute, the controlling decisions of this Court, and the happiness and well-being of this child-parent relationship requires us to conclude as the orphans' court division correctly did, that the family relationship so established is *final* and conclusive and may not be disturbed."

*Id.* at 154-55, 305 A.2d at 363 (footnote omitted).

***Adoption of Christopher P.***, 480 Pa. at 85-86, 389 A.2d at 97-98 (emphasis in original).

The trial court, discussing vacation of the termination of parental rights, acknowledged lack of authority for a collateral attack of voluntary termination proceedings. T.C.O. at 3. The court further highlighted that Mother failed to appeal the decree terminating her parental rights and the "time for taking such an appeal has long since expired." *Id.* Likewise, the court found that the doctrine of collateral estoppel prevents the subsequent challenge to the termination of parental rights. *Id.* at 4-5.

> Here, the issue presented by [Mother] is identical to that raised by the dependency proceeding: namely, whether the termination of [Mother]'s parental rights was warranted. There was a final judgment on the merits of that issue, as reflected by the Decree of February 12, 2014. [Mother] was a party to the dependency proceeding, where she was represented by counsel, and as such she had a full and fair opportunity to present the capacity defense she now seeks to establish. Accordingly, she may not presently relitigate the issue of whether the termination was warranted.

*Id.* at 5 (citation omitted).

Moreover, the court suggested that, regardless, termination of Mother's parental rights was warranted, stating, "[E]ven were this court inclined to entertain the notion that we have the authority to vacate a decree of termination on the basis of a petition filed nearly two years after the voluntary relinquishment proceeding, we would nevertheless find that reversing the termination is not warranted in the present circumstances."

*Id*.  The court continued, concluding, "[W]e detect neither abuse of discretion nor error of law in our decision to terminate [Mother]'s rights, and as such we will decline to vacate either the termination Decree or the subsequent Decree of adoption." *Id.* at 7.

Mother concedes the absence of authority to vacate the decrees terminating her parental rights and of adoption.  Mother, however, argues that the decrees should be vacated as a matter of justice and/or public policy due to the nature of her mental capacity.  Mother's Brief at 9.  Mother highlights psychiatric evaluations conducted in 2013 and 2014 in connection with a criminal matter in which she was a defendant.  *Id.* at Exhibits E and F.  Mother states,

> Justice was not served because here the court was not given all the information concerning the extent of [Mother]'s mental capacity at the time of the termination.  [Mother] was found by two different psychiatrists to be incompetent to understand legal proceedings due to her mental disability so she was unfit to stand trial and therefore unfit to enter into legal contracts.[8]

*Id.*  We disagree.

Upon review, in the case *sub judice*, we discern no abuse of discretion and/or error of law.  The record supports the trial court's denial of Mother's

---

[8] As indicated, Mother was represented by counsel at the voluntary termination proceedings.  While suggesting that counsel had access to documentation regarding Mother's mental capacity, Mother, however, does not frame her argument in terms of ineffectiveness of counsel.  Mother's Brief at 9-10.

belated requests to vacate the decrees terminating her parental rights and of adoption.

Significantly, Mother was represented by counsel during the voluntary termination proceedings. Findings of Fact and Conclusion of Law (C.A.F.), 2/13/14, ¶5, at 1-2; Findings of Fact and Conclusion of Law (J.D.C.), 2/13/14, ¶5, at 1-2. The court found at the time that Mother reviewed the implications of voluntary termination, as opposed to involuntary termination, with counsel and understood that she "would thereafter lose all rights as the biological parent" and Children "would be placed for adoption." *Id.* ¶¶5, 9, at 1-2; ¶¶5, 9, at 1-2. The court further found that Mother appreciated and was in agreement that she had not performed parental duties for at least six months prior to the hearing and failed to progress with regard to the issues causing Children to be found dependent. *Id.* ¶7, at 2; ¶7, at 2. The court took judicial notice that Mother has "mental health concerns which are significant and do not permit her to properly care" for Children. *Id.* As a result, the court found, and Mother therefore agreed, that the best interest of Children favored termination of Mother's parental rights. *Id.* ¶8, at 2; ¶8, at 2. There is no indication that Mother's mental health concerns prevented or in any way impeded her ability to knowingly consent to the voluntary termination. Moreover, counsel for Mother did not raise any issue of competency at the time, nor did Mother file a timely appeal on the basis of this issue. In addition, Mother made no attempt to assert any issues of competency, or any challenge whatsoever, prior to the entry of the adoption

decree approximately six months later. Interestingly, Mother first raised competency almost two years later, after Adoptive Parents filed to discontinue or modify the Act 101 Agreement and cease Mother's visitation. Hence, the evidence corroborates that Mother's consent to the voluntary termination of her parental rights was voluntary, intelligent, and deliberate. *See In re M.L.O.*, 490 Pa. at 240, 416 A.2d at 89–90.

Lastly, we observe Mother presents no actual challenge to validity of the adoption decree. In **Chambers appeal,** the mother sought to vacate both the adoption decree and prior decree of voluntary termination on the basis that her consent was not intelligent, voluntary and deliberate. 452 Pa. at 150-51, 305 A.2d at 361. Specifically, the mother asserted that incorrect information provided to her by the social worker, as well as her health, combined to undermine her consent to relinquish parental rights. *Id.* at 151, 305 A.2d at 361. Instantly, similar to **Chambers Appeal**, Mother does not directly dispute the legitimacy of the adoption decree, but her consent at the earlier termination proceeding. *Id.* at 153, 305 A.2d at 362. This opposition to consent at the prior termination proceeding "is not a permissible challenge to the validity or integrity of the adoption decree at all." *Id.* Thus, the record substantiates the trial court's denial of Mother's motion to strike the voluntary termination and adoption decrees.

As to the discontinuance of the Act 101 Agreement, the trial court based its decision to grant Adoptive Parents' petitions and discontinue the

agreement on the testimony of Adoptive Mother and Michele Johnston. T.C.O. at 8-12. The court reasoned:

> We accept Ms. [Johnston']s diagnosis as having been proven by clear and convincing evidence. Moreover, we accept her conclusion that the negative consequences associated with [C.A.F.]'s Reactive Attachment Disorder are such that continuing contact with his birth mother would be detrimental to his ongoing treatment and emotional development. As such, we find by clear and convincing evidence that [Adoptive Parents] have carried their burden of proving that discontinuing the Act 101 Agreement with respect to [C.A.F.] would clearly serve the child's needs, welfare, and best interest.
>
> Though the same concerns are not immediately present with respect to [J.D.C.], the evidence nevertheless favors discontinuing the Act 101 Agreement with respect to the younger of the two children as well. [J.D.C.]'s separation from his birth mother occurred at a much earlier age than occurred with respect to his older brother, which may explain why he does not appear to be similarly triggered by contact with [Mother]. However, it is possible that continued contact might resurface some early trauma or neglect. More fundamentally, having visits continue for one child and not the other would, in Ms. [Johnston]'s estimation, be "very confusing." Allowing [J.D.C.] to engage in visits with his birth mother but not [C.A.F] would instill feelings of resentment between either child and between the children and their parents. As such, the only feasible means of addressing the active harm that is done to [C.A.F.] by continuing the visits contemplated by the Act 101 Agreement is to cease the visits entirely, and with respect to both children. Accordingly, we find by clear and convincing evidence that [J.D.C.]'s needs, welfare, and best interest are also best served by the termination of the Act 101 Agreement. This finding is reinforced by the largely undisputed testimony that [J.D.C.] was benefitting very little by visiting with Mother. [J.D.C.]'s removal from her care occurred very shortly after his birth and as such he has a lesser degree of familiarity with Mother than his elder sibling. Accordingly, his actual level of engagement with Mother during visits tends to be minimal.

*Id.* at 11-12 (citations to record omitted).

- 12 -

Mother, however, asserts that Adoptive Parents had no intent to comply with the Act 101 Agreement and were immediately looking to void the Agreement. Mother's Brief at 13. Mother further contests Michele Johnston's finding that Children suffered from Reactive Attachment Disorder as "contrary to the evidence." *Id.* at 12. Mother avers that the evidence established that visits between her and Children went well and that "there is no evidence that the appellant is the cause of the children's behavior but rather it concluded that the children may have poor behavior with the adoptive parents because they were taken from their mother." *Id.* Again, we disagree.

As this issue involves a pure question of law, our standard of review is de novo, and our scope of review is plenary. *In re Wilson*, 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc*); *Harrell v. Pecynski*, 11 A.3d 1000, 1003 (Pa. Super. 2011) (citations omitted).

23 Pa.C.S. §2739 provides as follows:

**§2739.  Discontinuance of agreement.**

  **(a)  General rule.--**A party to an agreement or a child that is at least 12 years of age or older may seek to discontinue an agreement by filing an action in the court that finalized the adoption.

  **(b)  Standard for discontinuation.--**Before the court may enter an order discontinuing an agreement, it must find by clear and convincing evidence that discontinuance serves the needs, welfare and best interest of the child.

- 13 -

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re C.S.**, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

In the case *sub judice*, we have examined the opinion entered by the trial court in light of the record in this matter and agree with the analysis and discussion regarding the issue of discontinuing the Act 101 Agreement. We, therefore, adopt the opinion of the trial court as dispositive of this issue.

For the foregoing reasons, we affirm the order denying Mother's Motion to Strike Voluntary Parental Termination and Adoption and granting Adoptive Parents' Petitions for Discontinuance or Modification of Agreement.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017